UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINDA WEST, | : | |
| Plaintiff, | : | Hon. Dennis M. Cavanaugh |
| vs. | : | **OPINION** |
| JO ANNE B. BARNHART COMMISSIONER OF SOCIAL SECURITY, | : | Civil Action No.: 05-1708 |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon an application by Linda West ("Plaintiff"), to overturn the final determination of Jo Anne B. Barnhart, the Commissioner of Social Security ("Commissioner"), denying Plaintiff's request for Disability Insurance Benefits, Widow's Insurance Benefits, and Supplementary Security Income (hereinafter "SSI") under the Social Security Act (the "Act"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383 (c)(3). For the reasons set forth below, the Commissioner's dismissal of Plaintiff's claim is **reversed** and the final decision is **remanded** to the Commissioner for further proceedings in accordance with this Opinion.

### I. BACKGROUND

Plaintiff, born on February 5, 1951, has a high school education. Her work history includes experiences as a warehouse distribution manager, police department recruiter, retail clerk, supermarket supervisor, and warehouse supervisor. In her applications for Disability Insurance Benefits, Widow's Insurance Benefits, and SSI, she asserts that physical and

psychological impairments have rendered her unable to work since September 10, 2001.

## A. Procedural History

Plaintiff applied for SSI benefits on December 12, 2002, alleging disability since September 10, 2001, due to lower back and knee pain, asthma, diabetes mellitus, panic disorder and depression, as well as right hand discomfort resulting from surgery. (Transcript ("Tr.") at 44, 65-71). Her claims were initially denied on April 14, 2003, (Tr. at 24-28). Plaintiff's subsequent request for reconsideration was denied on July 8, 2003. (Tr. at 30-32). Plaintiff requested a hearing before Administrative Law Judge John M. Farley ("ALJ"). (Tr. at 34). Plaintiff also filed an application for Disability Insurance Benefits on May 15, 2004, and Disabled Widow's Insurance Benefits on May 25, 2004, that were escalated to the hearing level. (Tr. at 208-34). Following a hearing held on May 12, 2004, the ALJ, in a decision dated August 27, 2004, found Plaintiff was not disabled within the meaning of the Act. (Tr. at 11-21). On January 28, 2005, the Appeals Council denied Plaintiff's request for review, at which time the ALJ's decision became the final decision of the Commissioner. (Tr. at 4-6). Plaintiff appealed to this Court.

## B. Factual History

### 1. Medical Records Relating to Plaintiff's Physical Injury

Plaintiff has a history of arthritis affecting her hands, legs and feet, diabetes, asthma, and episodic bronchitis and pneumonia. (Tr. at 68-70). She also has been a moderate smoker and averages three cigarettes per day. (Tr. at 131). She has a condition of hypertension, which apparently is under control, as well as a history of bronchial asthma. (Tr. at 24, 125). She has not been admitted to the hospital for any asthma attacks recently, nor has she had any recent emergency room evaluations. (Tr. 125). Plaintiff has never used steroids. (Id.)

In 2000, she injured her right hand at work when she was struck on the medial aspect below the thumb. (Id.) As a result of that injury, she underwent physical therapy and later had surgery on her right hand in order to repair nerve damage in either 2001 or 2002. (Tr. at 246-48). Following surgery, Plaintiff resumed physical therapy to treat numbness, pain, and decreased grip strength. (Tr. at 125). Plaintiff also complains of lower back pain coupled with a general lack of strength. (Tr. at 66). Between 1985 and 1989, she underwent physical therapy on her neck and lower back, which were both injured as a result of an automobile accident. (Tr. at 202). In addition, Plaintiff has a torn anterior crucial ligament on her left knee (Tr. at 205), underwent minor back surgery in order to remove a cyst in August 2002 (Tr. at 231), and in 1998, suffered chest pains. (Tr. at 125). Plaintiff reported that she often has experienced sharp pain and itching in her knees, arms, elbows, and lower back (Tr. at 203), and that she recently was diagnosed with Hepatitis. (Tr. at 252-53). She currently is taking, or previously has taken, Albuterol, Percocet, Promethazine, Premarin, Vasotec, Enalapril, Allegra, and Zyrtec to treat her various medical conditions. (Tr. at 83, 126).

On February 25, 2003, Plaintiff saw Dr. Alexander Hoffman for a consultative examination at the request of the State Agency. (Tr. at 125-128). Dr. Hoffman noted that Plaintiff was alert, oriented, cooperative and intelligent, and observed that she got on and off the examination table without much difficulty and was able to ambulate without the use of any assistive device. (Tr. at 126). Plaintiff's height was noted to be 5 feet, 4 ½ inches, with a weight of 166 pounds. (Id.) Her resting heart rate was 70 beats per minute and blood pressure in her right arm was 138.68. (Id.) Plaintiff's lungs expanded symmetrically and were clear to percussion and auscultation. (Tr. at 127). Dr. Hoffman did not hear any wheezes, rales, or

rhonchi and did not find any edema, cyanosis or clubbing in her lower extremities. (Id.) Plaintiff had full range of motion regarding straight leg raising of both legs, and dorsi flexion and plantar flexion of her feet were normal. She was able to walk on her toes and on both heels. (Id.) Her sense of balance was intact and deep tendon reflexes were normal bilaterally. (Id.) Examination of the upper extremities did not reveal any deformity or joint swelling. (Id.) Slightly diminished grip strength in the right hand was observed. (Id.) Her pulmonary function test revealed a total vital capacity of 2.44, 91 percent of the predicted 2.68, and a one second forced expiratory volume of 1.75, which was 80 percent of the predicted 2.20. (Id.) Dr. Hoffman concluded that Plaintiff's asthma and hypertension were under control. (Id.)

Plaintiff saw Dr. John M. Sawicki for a further consultative examination on March 14, 2003. (Tr. at 136-140). Plaintiff complained of lower back pain since 2000, manifesting in difficulty bending, lifting, standing, sitting, walking, and twisting. (Tr. at 136). She reported that she had undergone back surgery in August 2002, to remove a cyst. (Id.) Dr. Sawicki's physical examination revealed a normal gait. (Tr. at 137). Plaintiff did not report any pain in the thoracic lumbar spine. (Id.) She exhibited a full range of motion in lateral flexion and flexion/extension. (Id.) Plaintiff was able to fully complete a straight leg raise and was able to squat, stand on her toes and her heels, and perform transfers. (Id.) Her muscular strength was noted to be 5/5. (Id.) An examination of Plaintiff's shoulders revealed full range of motion in forward elevation, abduction, adduction, internal rotation, and external rotation; her wrists revealed full range of motion in dorsi flexion, palmar flexion, radical deviation, and ulnar deviation. (Id.) Plaintiff's movements of her hands were sound and her grip strength was noted as 5/5. (Id.) An examination of Plaintiff's lower extremities showed that both her feet and hips had full range of

motion. (Id.) Dr. Sawicki observed that Plaintiff dressed and undressed slowly. (Id.)

Due to high blood sugar levels, Plaintiff was admitted to Jersey City Medical Center on December 2, 2003, at the referral of her primary care doctor. (Tr. at 145-154). Plaintiff complained to hospital staff of weakness, frequent urination, and chest pains. (Id.) An initial CT scan of the abdomen and an abdominal ultrasound, both conducted on December 3, 2003, did not reveal any abnormalities. (Tr. at 155). An echocardiographic report dated December 4, 2003, reported normal left ventricular size, thickness, and systolic function. (Tr. at 161). No abnormality was found in regional wall motion. (Id.) On December 8, 2003, chest x-rays were performed and the results were normal. (Tr. at 157-158). Plaintiff was diagnosed with a new onset of Diabetes Mellitus without complication, asthma, intermediate coronary syndrome and depressive disorder. (Tr. at 146). She was discharged on December 9, 2003, in stable condition. (Tr. at 147).

Dr. Michelle Reisner assessed Plaintiff in a residual function capacity form on March 2, 2004. (Tr. at 204-207). Dr. Reisner's report indicated Plaintiff was impaired with regard to standing, walking, sitting, and carrying up to 10 pounds. (Tr. at 204-205). Due to Plaintiff's non-insulin dependent diabetes mellitus, arthritis, asthma and hypertension, she was assessed to be limited in such activities as reaching, handling, feeling, pushing and pulling. (Tr. at 206). However, her hearing and speaking were unimpaired. (Id.) Dr. Reisner found that Plaintiff occasionally can climb, balance, stoop, crouch, kneel. (Tr. at 205). However, arthritis and anterior crucial ligament tear in her left knee prevent her from crawling. (Id.) Dr. Reisner recommended that Plaintiff avoid heights, chemicals, dust, fumes, humidity and moving machinery. (Tr. at 206).

Nicole Appleton, a therapist at Jersey City Medical Center, stated in her April 5, 2004 letter, that Plaintiff had been receiving physical therapy on both knees since February 18, 2004. (Tr. at 199). The therapy sessions consisted of moist heat application and therapeutic exercises. (Id.) Ms. Appleton reported that Plaintiff's condition has gradually improved and her strength has improved throughout her lower extremities. (Id.) Ms. Appleton further noted that Plaintiff's pain has decreased in both of her knees, although pain did not subside when Plaintiff was sitting, standing or descending stairs. (Id.)

### 2. Medical Records Relating to Plaintiff's Mental Condition

Dr. Ira Gash, a Ph.D. State agency psychologist, reviewed Plaintiff's record on February 3, 2003. (Tr. at 123). Dr. Gash concluded that Plaintiff's limitations were based on her physical, and not psychological, impairments. (Tr. at 123, D.'s Br. at 3). In a questionnaire, Dr. Gash stated Plaintiff's limitations were related to her physical complaints, not any psychological impairment. (Tr. at 123). Dr. Gash opined that there was no further need to reevaluate her regarding her contention of a mental impairment. (D.'s Br. at 3-4).

Plaintiff told Dr. Hoffman in her consultative examination on February 25, 2003, that she experiences frequent panic attacks. (Tr. at 126). After observation, Dr. Hoffman concluded that she appeared to be well oriented and did not appear clinically depressed at time of the examination. (Tr. at 127). However, as previously indicated, Plaintiff later was diagnosed with depressive disorder at the time of her discharge by Dr. Reisner from the Jersey City Medical Center on December 9, 2003. (Tr. at 146). Plaintiff has not been recently hospitalized for panic disorder or depression, nor is she currently undergoing any psychiatric treatment. (Tr. at 126). The panic disorder is being treated with Meprobomate, 1 pill every four hours consisting of 400

mg daily. (Tr. at 71, 126).[1]

### 3.  Plaintiff's Testimony

At the hearing held on May 12, 2004, Plaintiff testified about her physical and mental condition. (Tr. at 242-61). She stated she was unable to work due to her asthma and diabetic conditions as well as pain in her back, hands and knees. (Tr. at 246-49). According to Plaintiff, she stopped working in early 2001, shortly after injuring her wrist at work. (Tr. at 245-48). She stated that she had surgery on her right wrist in either 2001 or 2002. (Id.) A surgery to remove a cyst from Plaintiff's back also occurred during this time. (Tr. at 249). Plaintiff's asthma worsened in 2003 and she was diagnosed with diabetes in December 2003. (Tr. at 250-251). She uses a Nebulizer two to three times per day to treat her asthma. (Tr. at 250). Plaintiff also testified that she suffers from hypertension and depression, although neither condition prevented her from working in the past. (Tr. at 251). She stated that her physician, Dr. Gibbs, treated her arthritis and depression from 1999 to 2003. (Tr. at 248-249, 255). Plaintiff revealed that she had been recently diagnosed with Hepatitis. (Tr. at 252). Plaintiff testified that she can stand for ½ to 1 hour, walk 1 ½ blocks and lift/carry up to 10 pounds. (Tr. at 255-257). She reported that the act of sitting causes discomfort in her knee (Tr. at 257), and complained of fatigue throughout the day. (Tr. at 252, 258). Although Plaintiff acknowledged that she was able to cook, clean, and care for her personal needs, she testified that these activities often caused pain in her elbow and wrist. (Tr. at 258).

### 4.  The Decision of the ALJ

After evaluating the aforementioned facts, the ALJ determined Plaintiff was not disabled

---

[1] Plaintiff's anxiety medication was prescribed by her general physician. (Tr. at 123).

within the meaning of the Act and denied her application for disability benefits. (Tr. at 14-21). The ALJ found that although Plaintiff suffered from osteoarthritis, asthma, and diabetes mellitus, none of these illnesses or impairments met or were equal to those listed in Appendix I, Subpart P to Regulations No. 4. (Tr. at 17). The ALJ also did not find any evidence that Plaintiff's combined impairments met the requirements listed in Appendix I to Subpart P, 20 C.F.R. 404. (Id.) Plaintiff's alleged panic attacks and depression were not deemed significant since the record did not reveal any active treatment for these conditions, nor did Plaintiff contend that her depression affected her ability to work. (Tr. at 19). Although Plaintiff was found to have suffered from "severe" impairments, the ALJ concluded that she still maintained the residual functional capacity to perform the exertional demands of a full range of light work. (Id.) The ALJ noted that Plaintiff's previous jobs, such as a retail clerk, warehouse supervisor, and warehouse manager, are considered light work according to the Dictionary of Occupational Titles, and based on her residual functional capacity, surmised that she would be able to return to such work. (Id.) Finally, the ALJ declared that, even if Plaintiff's impairments did prevent her from working at her past relevant job, Plaintiff was capable of working in other jobs in the national economy. (Id.) In reaching these conclusions, the ALJ did not accord significant weight to Plaintiff's subjective complaints, or to the findings of Plaintiff's treating physician, Dr. Reisner as reflected in Dr. Reisner's March 2, 2004. (Tr. at 18-19; Tr. 204-207). Instead, the ALJ relied on the remaining objective medical evidence of record in denying Plaintiff's disability application. (Tr. at 17-20).

## II. DISCUSSION

### A. Standard of Review

A claimant is entitled to benefits under the Act only if he satisfies all relevant requirements of the statute. To establish a valid claim for disability insurance benefits and SSI benefits, the claimant must meet the insured status requirements of 42 U.S.C. § 423(c) and the income and resource limitations of 42 U.S.C. §§ 1382(a) and 1382(b), respectively. Furthermore, for the purposes of both benefits, the claimant must demonstrate that she was disabled within the meaning of the Act.

### B. Analysis for Determining Disability

Under the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see, 42 U.S.C. § 1382c(a)(3)(A). Physical or mental impairments are those that "result from anatomical, physiological or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3); 42 U.S.C. § 1382c(a)(3)(D). Furthermore, an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations provide a five-step, sequential evaluation procedure to

determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  First, the Commissioner must inquire whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is found to be currently engaged in substantial gainful activity, he will not be found to be disabled without first considering her medical condition.  20 C.F.R. § 404.1520(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must then decide whether the claimant suffers a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the impairment is not severe, the claimant will not be found disabled.  20 C.F.R. § 404.1520(c).  Third, if the claimant is found to be suffering from a severe impairment, the Commissioner must decide whether the impairment equals, or exceeds, in severity one of the impairments listed in Appendix I of the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is listed, or is the equivalent to a listed impairment, the Commissioner must find the claimant disabled without consideration of other facts.  20 C.F.R. § 404.1520(d).  Fourth, if the impairment is not listed, the Commissioner must consider whether the claimant has sufficient residual functional capacity to perform basic work activities.  20 C.F.R. § 404.1521(a).  Residual functional capacity is defined as what the claimant "can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  If a claimant has the residual functional capacity to meet the physical and mental demands of her past work, the Commissioner must find her not disabled.  20 C.F.R. § 404.1520(f).  Finally, if the claimant cannot perform any past relevant work, the Commissioner must determine, on the basis of claimant's age, education, work experience, and residual functional capacity, whether she can perform any other work.  20 C.F.R. § 404.1520(a)(4)(v).  If she cannot, the Commissioner will find her disabled.  20 C.F.R. § 404.1520(g).  The claimant bears the initial burden of establishing that her impairment prevents her from returning to past

relevant work.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).  If the claimant satisfies the first four steps noted above, the burden shifts to the Commissioner to demonstrate that work exists to a significant degree in the national economy that the claimant could perform.  Id.

### C.  Scope of Review

A reviewing court must uphold the Commissioner's factual findings if they are supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  Substantial evidence means "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Perales, 402 U.S. at 401 (quoting Consol. Edison, 305 U.S. at 229).  However, substantial evidence "does not mean a large or considerable amount of evidence."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence may be "less than a preponderance."  Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).  However,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

"The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner."  Claussen v.

Chater, 950 F.Supp. 1287, 1292 (D.N.J. 1996) (citing Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983)).  The standard affords "deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).  "The inquiry is not whether the reviewing court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable."  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988)).  Therefore, a court may not "set the Commissioner's decision aside if it is supported by substantial evidence, even if [the reviewing court] would have decided the factual inquiry differently."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Despite the high degree of deference, the reviewing court retains a "responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence."  Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000).

The reviewing court has a duty to review the evidence in its totality.  Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf, 972 F. Supp. at 284 (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)) (internal citation omitted).  The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581, 584-86 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is essential to a meaningful

court review:

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977) (internal citation omitted)).  A reviewing court often will defer to an ALJ's credibility determination.  Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).  Nevertheless, this deference does not extend to situations where the record does not impart a sufficient basis for the ALJ's decision to discredit a party.  Id.  Nor is the ALJ permitted to make "speculative conclusions without supporting evidence."  Burnett, 220 F.3d at 125.

### D. Analysis

Plaintiff contends that the ALJ erred as a matter of law by (1) failing to support his determination with substantial evidence that Plaintiff's injuries were not severe; (2) failing to properly evaluate Plaintiff's subjective complaints; (3) failing to support his determination of Plaintiff's residual functional capacity with substantial evidence; and (4) failing to comply with the standards established for the Commissioner in his determination of Plaintiff's ability to do past relevant work.  (Pl.'s Br. at 5-27).  For the reasons set forth below, the Court remands this case for further proceedings consistent with this Opinion.

As to Plaintiff's first contention that the ALJ failed to support his determination with substantial evidence that Plaintiff's injuries were not severe, the ALJ is required to explicitly and comprehensively set forth the reasons for his decision.  See Burnett, 220 F.3d at 120.  In Clifton

v. Chater, 79 F.3d 1007 (10th Cir. 1996), the Tenth Circuit remanded an ALJ's conclusion that the appellant's impairments did not "meet or equal any Listed Impairment" since he did not expressly delineate his reasoning and, as a consequence, his conclusion was beyond meaningful judicial review.  Id. at 1009.  This Court is in accordance with Plaintiff's contention that the ALJ's determination is beyond meaningful judicial review.  Here, the ALJ stated in the most general terms that Plaintiff did not meet the requirements of Listings 1.04 since the "evidence does not demonstrate herniated discs, spinal arachnoiditis, spinal stenosis, or degenerative disc disease."  (Tr. at 17.)  The ALJ similarly concluded that Plaintiff's asthma, hypertension, nerve damage, and arthritis were not severe "within the meaning of the Regulations."  (Id.)  Furthermore, the ALJ dismissed Plaintiff's frequent panic attacks since she was not receiving active treatment and did not have any recent hospitalizations.  (Tr. at 19).  The State agency psychologist, Dr. Gash, concluded that Plaintiff was not psychologically impaired, notwithstanding that he never met her.  (See Tr. at 123).  Although the record did not conclusively establish Plaintiff's contention of panic attacks, it did not clearly rebut such an impairment either.  It is impermissible for an ALJ to "draw any inferences about an individual's symptoms and their functional effects from a failure to seek . . . medical treatment."  Soc. Sec. Rul. 96-7p (1996).  The mere lack of corroboration cannot serve as grounds to dismiss Plaintiff's claims.  Id.

      The ALJ failed adequately to consider Plaintiff's impairments in their entirety and did not put forth sufficient reasons to deny her impairments in combination, as required by the Act.  20 C.F.R. § 404.1520(a)-(c).  Moreover, the ALJ failed to address Plaintiff's torn anterior crucial ligament and her recent diagnosis of Hepatitis in his analysis, although these issues were brought

up within exhibits available to the ALJ and during Plaintiff's testimony. (Tr. 205, 252-54.) In fact, her knees, and the frequent occasions when they buckled, were identified at the hearing as one of the primary factors interfering with Plaintiff's capacity to work. (Tr. 252., 255-56). Additionally, Plaintiff notes that an applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). It is apparent that the lingering effects from hand surgery, panic disorder, trouble with her knees and lower back, and recent diagnosis of Hepatitis, were significant factors this Court, based on the record before it, cannot conclude were sufficiently considered by the ALJ. See Id. Because the ALJ failed to address Plaintiff's impairments and did not consider other significant impairments, the Court cannot conclude that the Commissioner's decision is supported by substantial evidence. Accordingly, the matter is remanded to the Commissioner to make further determinations consistent with this Opinion.

     Plaintiff also argues that the Commissioner's final decision is flawed because it fails to adequately evaluate Plaintiff's subjective complaints. (Pl.'s Br. 21-25). The ALJ supported his conclusion by referring to Dr. Sawicki's evaluation that Plaintiff was able to walk on her heels and toes, perform squats and raise both legs. (Tr. at 18). However, this finding did not indicate Plaintiff's level of discomfort. Rather, it simply revealed that she was physically capable of performing such activities. Plaintiff herself admitted to being able to stoop, climb, lift, and grasp, although all these activities caused her pain. (Tr. at 66). The ALJ did not address why, if her complaints were not considered credible, Plaintiff has been regularly consuming Percocet every six hours, every day since August 2002. (Tr. at 67). Nor are the facts that Plaintiff cooks,

washes dishes, cleans, watches television, goes shopping and attends church, sufficient by themselves to contradict her subjective complaints of pain. (Tr. at19). Plaintiff may engage in these activities as she so desires, such as in times of relative comfort. Therefore, their presence was not an adequate justification to dismiss her subjective complaints. Although it was established that she was able to perform routine functions, it was not demonstrated that such daily activities were unaffected by her impairments. Nor can these activities be considered "significant daily activities," as the Commissioner has asserted (see D.'s Br. at 24-25); rather, most of these actions are basic behaviors of survival and hygiene. In fact, Plaintiff's testimony suggests that her ability to manage daily functions were significantly hindered. (Tr. at 256-258). Therefore, the matter is remanded to the Commissioner to more closely consider the credibility of Plaintiff's subjective complaints.

Plaintiff contends the ALJ failed to support his determination of Plaintiff's residual functional capacity with substantial evidence. (Pl.'s Br. 17-20). The ALJ is required to give sufficient indications as to how he arrives at a residual functioning capacity determination. See Burnett, 220 F.3d at 121. While the ALJ acknowledged that Plaintiff was limited in certain areas due to her impairments, he concluded that her "reported activities of daily living indicate that she is not particularly limited by her impairments." (Tr. at 19). The ALJ referred to evidence which indicated that Plaintiff "cooks, wash dishes, cleans, watches television, and goes shopping once a month" to reach his decision. (Id.) However, the ALJ did not draw any connection between these performances and Plaintiff's ability to work, nor did he explain why this information should be considered substantial evidence supporting the finding that Plaintiff can "perform the exertional demands of a full range of light work." (Id.) A different finding of Plaintiff's residual

functional capacity may, in turn, affect the related conclusion of her capacity to engage in other jobs existing in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  For these reasons, the ALJ's determination of Plaintiff's residual functional capacity was not based on substantial evidence.  The ALJ should articulate such evidence on remand.

It is further noted that the ALJ failed to accord meaningful weight to the medical opinion of Dr. Reisner, Plaintiff's treating physician.  (Pl.'s Br. 15-17).  One of Plaintiff's contentions is that Courts have often held that impairments may be established from the treating physician's assessment unless clearly contradicted by persuasive evidence.  See Smith v. Sullivan, 720 F.Supp. 62, 64 (E.D. Pa. 1989); (Pl.'s Br. 16).  Additionally, under the regulations, opinions of treating physicians generally are afforded significant weight.  20 C.F.R. § 404.1527(d)(2).  Nevertheless, the ALJ rejected Dr. Reisner's assessment that Plaintiff's impairments limited her activities since her conclusions were "unsupported and contradicted by objective medical evidence."  (Tr. at 19).  It is true that the presence of contradicting substantial evidence is sufficient to deny the treating physician's controlling weight.  See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).   In the present case, however, much of Dr. Reisner's opinion was supported by other evaluations or remained uncontested.  Plaintiff's abilities to climb, balance, stoop, crouch, kneel and crawl were solely addressed by Dr. Reisner's evaluation.  (Tr. at 205.)  Additionally, Dr. Reisner's report that Plaintiff's ability to handle objects and engage in pushing and pulling is supported by Dr. Hoffman's assessment that Plaintiff's grip strength was diminished.  (Tr. at 127, 206.).  It appears that Dr. Sawicki's observation that Plaintiff's grip strength was completely intact is the opinion that should be disregarded, as it is the one that is contradicted by the aforementioned evaluations.  (Tr. at 137).  Although Ms. Appleton's

17

evaluation acknowledged that Plaintiff's pain was improving, it affirmed Dr. Reisner's record that she experienced pain in both knees, especially when sitting, standing and descending stairs. (Tr. at 199, 205). In the view of this Court, while the findings of the treating physician are not necessarily determinative, they should have been more thoroughly considered and addressed in the ALJ's decision.

Finally, Plaintiff asserts that the ALJ failed to comply with the Commissioner's required procedure with regard to a finding that Plaintiff could perform past relevant work. (Pl.'s Br. 25-28). Plaintiff argues that the ALJ did not adequately evaluate her individual experiences at work, which she claims were experiences not indicative of "light work." (Pl.'s Br. 27-28). Past relevant work may be considered as jobs generally performed in the national economy, according to definitions provided by vocational experts and the Department of Labor, and not necessarily as the position may pertain to a specific individual. 20 C.F.R. § 404.1560(a)(2). Plaintiff's previous job experience as a retail clerk, warehouse supervisor, and warehouse manager were all categorized as "light work" in the Department of Labor's <u>Dictionary of Occupational Titles</u> and accepted by the ALJ as such. (Tr. at 19). Based on the information provided by the <u>Dictionary of Occupational Titles</u>, the ALJ reasonably categorized Plaintiff's past work experience as "light work" as it is generally performed in the national economy. (<u>See</u> D.'s Br. 25-26).

## E. Conclusion

For the aforementioned reasons, the ALJ's dismissal of Plaintiff's claim is vacated and the case remanded to the Commissioner for additional proceedings in accordance with this opinion. On remand, the ALJ shall fully develop the record and explain his findings at step three, including a consideration of each relevant impairment, incorporating Plaintiff's subjective

complaints, and an analysis of whether Plaintiff's combined impairments are or are not equivalent in severity to one of the listed impairments. If necessary to proceed to step four, the ALJ should proceed beyond a mere recitation of evidence in explaining why it is necessary to find that Plaintiff can perform light work when determining Plaintiff's residual functional capacity. An appropriate Order accompanies this Opinion.

          S/ Dennis M. Cavanaugh
          Dennis M. Cavanaugh, U.S.D.J.

Date:       June 13, 2006
Original:   Clerk's Office
Cc:        All Counsel of Record
           File